**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG**

**BRYANT KEITH YOUNG,**

              **Plaintiff,**

**v.**                                                                    **Civil Action No. 1:21-CV-35
                                                                          (JUDGE KLEEH)**

**WEST VIRGINIA UNIVERSITY,
WEST VIRGINIA UNIVERSITY
BOARD OF GOVERNORS, and
DR. KATHLEEN O'HEARN RYAN,**

              **Defendants.**

**REPORT AND RECOMMENDATION
RECOMMENDING THAT DEFENDANTS' MOTION TO DISMISS BE GRANTED**

On March 15, 2021, *pro se* Plaintiff Bryant Keith Young filed a Complaint against Defendants Dr. Kathleen O'Hearn Ryan, West Virginia University, and West Virginia University Board of Governors. [ECF No. 1]. On April 16, 2021, Defendants Dr. Kathleen O'Hearn Ryan, West Virginia University, and West Virginia University Board of Governors filed a Motion to Dismiss and Memorandum of Law in Support of Defendants' Motion to Dismiss. [ECF No. 9 and 10]. On the same day, Defendants filed an Amended Motion to Dismiss and Memorandum of Law in Support of Defendants' Amended Motion to Dismiss. [ECF No. 11 and 12]. The undersigned is also in receipt of Plaintiff's Brief Opposing Motion to Dismiss the Complaint, [ECF No. 14], Defendants' Reply in Support of Motion to Dismiss, [ECF No. 16], and Plaintiff's Response Opposing to Defendants' Reply, [ECF No. 17].

For the reasons stated herein, the undersigned respectfully **RECOMMENDS** that Defendants' Motion to Dismiss and Amended Motion to Dismiss, [ECF No. 9 and 11], be **GRANTED**, and the Plaintiff's Complaint, [ECF No. 1], be **DISMISSED**.

1

## I.   FACTUAL BACKGROUND

Bryant Keith Young ("Plaintiff" or "Young") is a fifty-six-year old African American man and SAG-AFTRA union actor. Young was enrolled as an undergraduate student at West Virginia University ("WVU") in Morgantown, West Virginia for the Spring 2020 semester. Young was enrolled in an English 200-level course taught by Dr. Kathleen O'Hearn Ryan ("Dr. Ryan" or "Defendant Ryan"), a professor at WVU.

During the early spring semester, Plaintiff asked a number of WVU students, including several female students in the English course, whether they would like to participate in an independent short film project that he was going to shoot in West Virginia.

In March 2020, Dr. Ryan called Young into her office where she informed him that she had received complaints that he was pressuring some female students to be part of the film. A student had complained to one of Dr. Ryan's professor-colleagues; this student and the colleague subsequently came to Dr. Ryan with the allegations. Young told her the allegations were false, that he saw talent in these students, and the students agreed to be part of his project. Dr. Ryan told Young "Well, let them use that talent for something else." [ECF No. 1 at 3].

Young later learned that Dr. Ryan also called additional female students (who were never asked to be a part of his project) to her office and mentioned Young to these students during their meetings.

Around July 2020, Young requested the Office of Student Conduct investigate the student(s) who had made the purportedly false allegations against him. Carrie Showalter ("Showalter") and Jill Gibson ("Gibson") from the Office of Student Conduct stated there was not a complaint made against Young. Young contacted James Goins, Jr. ("Goins"), Director of Equity Assurance/Title IX Coordinator (Sexual Misconduct). Goins informed Young that Dr. Ryan

attempted to have Goins investigate Young for sexual misconduct and Goins denied her request. Goins stated that Young's actions did not constitute sexual misconduct.

As part of the English course, Dr. Ryan read a Shakespearean poem with sexual connotations to the class and asked the class to write a poem as part of a related assignment. When reviewing Young's poem, Dr. Ryan stated to Young, "due to the climate, you should not read a poem with sexual innuendos." [ECF No. 1 at 5]. Young ultimately had to rewrite his poem as a result. Young believes Dr. Ryan did not want Young to write a poem with sexual innuendos because Dr. Ryan had "decided Plaintiff was a sexual deviant and that the Plaintiff committed sexual malfeasance and the student would be offended." [Id.].

Young suffered from distress as a result of the allegedly discriminatory conduct and false allegations. He constantly emailed the Office of Student Conduct, specifically Showalter, "hoping for some relief, justification, and closure, which [Young] did not receive, maybe no fault of Showalter's own." [ECF No. 1 at 7]. Plaintiff graduated from WVU in Fall 2020.

On March 15, 2021, Plaintiff Young filed his *pro se* Complaint in this Court against Defendants Dr. Kathleen Hearn O'Ryan, West Virginia University, and West Virginia University Board of Governors.

## II. PARTIES' CONTENTIONS

### A. Plaintiffs' Complaint [ECF No. 1]

In his Complaint, Plaintiff brings five causes of actions against Defendants: (1) denial of due process pursuant to 42 U.S.C. § 1983 under the Fourteenth Amendment of the United States Constitution and Article III, Section 7 of the West Virginia Constitution; (2) denial of freedom of speech pursuant to 42 U.S.C. § 1983 under the First Amendment of the United States Constitution and Article III, Section 7 of the West Virginia Constitution; (3) age discrimination under 34 C.F.R.

3

110; (4) race discrimination under 34 C.F.R. 100; and (5) making false, fictitious, or fraudulent claims in violation of 18 U.S.C. § 287.

Plaintiff first claims Defendants violated Plaintiff's procedural due process as guaranteed by the Fourteenth Amendment of the United States Constitution and Article III, Section 7 of the West Virginia Constitution because Dr. Ryan conducted her own investigation into the Plaintiff's alleged sexual misconduct. Plaintiff next claims Dr. Ryan violated his freedom of speech rights, as guaranteed by the First Amendment of the United States Constitution and Article III, Section 7 of the West Virginia Constitution, by denying him the opportunity to write or read a poem with sexual innuendos.

Plaintiff brings a third claim of age discrimination, citing to 34 C.F.R. 110. Plaintiff states that it is his "opinion that Dr. Ryan implemented these actions due to him being a much older student, which constitutes age discrimination[,]" and he "feels that his age is a direct cause of Dr. Ryan's actions, performing her own investigations and accusing him of doing something wrong by asking female students to be part of film project." [ECF No. 1 at 5].

Plaintiff brings a fourth claim of racial discrimination, citing 34 C.F.R. 100. Plaintiff simply states he "feels that if he were not African American, Dr. Ryan's actions would have been different, and she would not have taken any actions at all. This constitutes race discrimination." [ECF No. 1 at 6].

Fifth and last, Plaintiff alleges Dr. Ryan violated 18 U.S.C. § 287 by "cho[osing] to investigate him for false accusations that were made" and by "cho[osing] to defendant these false accusations against Plaintiff[.]" [ECF No. 1 at 6].

Plaintiff claims that, due to the conduct of the named co-defendants, Plaintiff was deprived of his constitutionally protected results and has been damaged as a result. Specifically, he claims

that he has suffered "suffered defamation, and slander because of the false accusations brought against him," "suffered embarrassment, humiliation, emotional distress and damage to his reputation," and "suffered many months of depression, psychological pain, and distress." [ECF No. 1 at 6-7]. Plaintiff explains this "situation could have been really detrimental to the Plaintiff's reputation, as well as his person." [ECF No. 1 at 7].

Plaintiff Young respectfully requests judgment in his favor, including appropriate declaratory or equitable relief required to prevent the continued violation of Plaintiff's constitutional rights, general damages for past, present, and future pain and suffering, and other damages in the excess of $1,000,000 (one million dollars), costs and fees associated with bringing this action, and any other award(s) that the Court deems just and proper.

## B. Defendants' Motion to Dismiss [ECF No. 9 and 11][1]

In their Motion to Dismiss, Defendants argue that Plaintiff's First and Fourteenth Amendment claims, pursuant to 42 U.S.C. § 1983, fail to state a claim upon which relief may be granted because Defendant are entitled to Eleventh Amendment immunity from suit, and further, the West Virginia Board of Governors ("WVBOG") is not a person capable of liability within the purview of § 1983. Defendants also argue Plaintiff's Fourteenth Amendment claim must fail as a matter of law because Plaintiff fails to allege a denial of a life, liberty, or property interest.

Defendants argue that Plaintiff's discrimination claims must also fail because they are conclusory and offer no factual allegations to support a reasonable inference of age or race discrimination. Defendants argue that, regarding the claim of age discrimination, the remedy sought, compensatory monetary damages, is unavailable under the Age Discrimination Act of

---

[1] The undersigned would note that on April 16, 2021, Defendants, by counsel, filed a Motion to Dismiss [ECF No. 9] and Memorandum of Law in Support of Defendant's Motion to Dismiss [ECF No. 10]. On the same day, Defendants filed a substantively identical Amended Motion to Dismiss [ECF No. 11] and Memorandum of Law in Support of Defendants' Motion to Dismiss [ECF No. 11].

1975, and Plaintiff has not first exhausted administrative remedies before filing suit as required under the Act. Defendants additionally argue, regarding the claim of race discrimination, that the proper defendant in a Title VI case is an entity rather than an individual and, thus, Plaintiff fails to state a cognizable claim against Defendant Ryan.

Defendants lastly argue that the False Claims Act, 18 U.S.C.§ 287, does not provide a private cause of action and, moreover, Defendants WVU BOG and Dr. Ryan are not an agency or official of the federal government. Accordingly, Defendants argue Plaintiff's final claim must be dismissed as a matter of law.

Defendants are ultimately requesting Defendant's Motion to Dismiss be granted and Plaintiff's Motion to Dismiss be granted with prejudice.

### C. Plaintiff's Brief Opposing Motion to Dismiss the Complaint [ECF No. 14]

In his Brief Opposing Motion to Dismiss the Complaint, Plaintiff responds to the Defendants' Motion by arguing that "Plaintiff's Complaint is so thoroughly particularized that it must survive and Defendants' motion to dismiss should be denied." [ECF No. 14 at 4]. Plaintiff reiterated that "[i]n the opinion of the Plaintiff, he was singled out by Dr. Ryan due to him being African American and much older. It was obvious that Dr. Ryan found the attention he was receiving from the Caucasian young ladies were very offensive to her." [ECF No. 14 at 5].

Plaintiff argues that if the Defendants truly found the clarity of the pleadings insufficient, they should have moved for a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure rather than moving to dismiss under Rule 12(b)(6). Plaintiff argues that even under Rule 9(b), which he believes applies to this case because his claims include claims for false allegations and discrimination, the pleading standard is not heightened to the level required to

survive a motion for summary judgment. Plaintiff argues his Complaint is "sufficient clear and detailed[,]" and Defendants' arguments to the contrary must be disregarded. [ECF No. 14 at 6].

In regards to his § 1983 claims, Plaintiff argues that "[a]though WVUBOG is not a person, they are an educational institution, which employs individuals[,]" including Defendant Ryan, who he claims violated his civil rights and privileges by conducting her own investigation into his actions and by restricting his actions in her English course. [ECF No. 14 at 7].

Plaintiff adds that Defendant Ryan "did not give him fair and just treatment[,]" "she treated him harsher than other students[,]" and "Plaintiff was treated different than the other students [that] were in the class because of his age and male gender. Dr. Ryan became suspicious of Plaintiff, monitored his assignments, and put him under observation. This caused Plaintiff emotional distress." [ECF No. 14 at 7-8]. Plaintiff also offers that Plaintiff is currently enrolled to begin in WVU's Master of Business Administration ("MBA") program starting in June 2021.

**D.  Defendants' Reply in Support of Motion to Dismiss [ECF No. 16]**

In their Reply, Defendants argue that this Court should disregard the additional facts plead in Plaintiff's responsive brief. Defendants reiterate their claims that Plaintiff's Complaint still fails to meet the minimum threshold of plausibility and as such should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

Defendants also argue that Plaintiff fails to address or rebut Defendants arguments found in the Motion to Dismiss, and this failure to respond to the arguments found in the motion to dismiss equate to Plaintiff abandoning his claims. Defendants reiterate their request that the Court grant their Motion to Dismiss and enter an order dismissing Plaintiff's Complaint with prejudice.

**E.  Plaintiff's Response Opposing Defendant's Reply [ECF No. 17]**

In his Response Opposing Defendant's Reply, Plaintiff argues that because of his *pro se* status and pursuant to Rule 15 of the Federal Rules of Civil Procedure, this Court "should be lenient and willfully allow Plaintiff to amend or add new information in its pleadings as so required to support his claims." [ECF No. 17 at 2]. Plaintiff reasserts that "[a]ll of Plaintiff's claims are true and factual," [ECF No. 17 at 2], and that the Complaint "not only meets but also exceeds the standards governing the form of a complaint as required by Federal Rule of Civil Procedure 8(a)," [ECF No. 17 at 1].

### III. LEGAL STANDARD

To state a claim for relief, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement serves to give "the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir.2008). Detailed factual allegations are not required. Twombly, 550 U.S. at 555. The factual allegations simply must be "enough to raise a right to relief above the speculative level." Id. The "sheer possibility that a defendant has acted unlawfully" is insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Facial plausibility is established when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). Additionally, a

court must "liberally construe" complaints filed *pro se*. Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)," so long as "all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir.2007) (quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir.1993)).

When rendering its decision, a court should consider only the allegations contained in the complaint, the exhibits to the complaint, matters of public record, and other similar materials that are subject to judicial notice. Conklin v. Jefferson Cty. Bd. of Educ., 205 F. Supp. 3d 797, 803 (N.D.W. Va. 2016)(citing Anheuser–Busch, Inc. v. Schmoke, 63 F.3d 1305, 1312 (4th Cir.1995)). A district court should grant a motion to dismiss where the complaint is insufficient to state a claim to relief, outlined by factual allegations, that is plausible on its face.

## IV. ANALYSIS

**A.    The undersigned recommends Plaintiff's § 1983 claims be dismissed because of the Defendants' Eleventh Amendment Immunity as well as a failure to allege facts supporting the due process claims and freedom of speech claims.**

Under 42 U.S.C. § 1983, individuals may bring federal claims for violations of their constitutional rights. Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.

Plaintiff claims in Count I of his Complaint that the Defendants violated his procedural due process rights as guaranteed by the Fourteenth Amendment and that Defendant Ryan also violated his freedom of speech as guaranteed by the First Amendment. Defendants argue that Plaintiff's § 1983 claim must be dismissed because Defendants are entitled to immunity under the Eleventh Amendment, WVU BOG is not a person for the purposes of § 1983, and Plaintiff's Fourteenth Amendment claims are not sufficient to allege a denial of life, liberty, or property.

*1. Eleventh Amendment Immunity and Personhood*

The Eleventh Amendment to the United State Constitution provides for state sovereign immunity:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI, § 1. See also Seminole Tribe of Fla. v. Fla., 517 U.S. 44, 54, (1996) ("[F]ederal jurisdiction over suits against unconsenting States 'was not contemplated by the Constitution when establishing the judicial power of the United States.'")(internal citations omitted).

The Supreme Court of the United States has emphasized "the importance of resolving immunity questions at the earliest possible stage in litigation ...." Hunter v. Bryant, 502 U.S. 224, 227 (1991). "Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013) (quoting Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir.2011). Eleventh Amendment

immunity is a defense with "attributes of both subject-matter jurisdiction and personal jurisdiction." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 480 (4th 2005). Thus, an Eleventh Amendment defense may be addressed pursuant to a motion to dismiss for lack of subject matter under Rule 12(b)(1) or pursuant to a motion to dismiss under 12(b)(6). Sarkissian v. W. Virginia Univ. Bd. of Governors, No. CIV.A. 1:05CV144, 2007 WL 1308978, at *3 (N.D.W. Va. May 3, 2007)

The Eleventh Amendment to the United States Constitution generally bars individuals from filing suit against a State "unless the State has waived its immunity, . . . or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989)(internal citations omitted). The United States Supreme Court has "made clear" that "Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity[.]" Will, 491 U.S. at 66 (citing Quern v. Jordan, 440 U.S. 332 (1979)). Sarkissian v. W. Virginia Univ. Bd. of Governors, No. CIV.A. 1:05CV144, 2007 WL 1308978, at *4 (N.D.W. Va. May 3, 2007)("It is well established that Congress did not abrogate the Eleventh Amendment immunity of states when it enacted 42 U.S.C. § 1983.").

Courts have "almost universally" recognized that public state universities are "arms of the state." Maryland Stadium Authority v. Ellerbe Becket Incorporated, 407 F.3d 255, 262 (4th Cir. 2005). See W. Virginia Univ. Bd. of Governors ex rel. W. Virginia Univ. v. Rodriguez, 543 F. Supp. 2d 526, 531 n. 3 (N.D.W. Va. 2008)(citing precedent from the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits).

This Court, and others, have specifically and repeatedly held that the WVU BOG is immune from suit under the Eleventh Amendment. See Id. at 535 ("West Virginia University and its Board of Governors are arms and alter egos of the State of West Virginia[.]"); Al-Asbahi v. W.

Virginia Univ. Bd. of Governors, No. 1:15CV144, 2017 WL 402983, at *10 (N.D.W. Va. Jan. 30, 2017), aff'd, 724 F. App'x 266 (4th Cir. 2018) ("[I]t is beyond argument that the WVU Board is immune under the Eleventh Amendment from all . . . claims, both legal and equitable."). Similarly, Marshall University enjoys the same Eleventh Amendment immunity. See Klug v. Marshall Univ. Joan C. Edwards Sch. of Med., No. CV 3:18-0711, 2019 WL 1386403, at *9 (S.D.W. Va. Mar. 27, 2019)(plaintiff's bread of contract claim barred by the Eleventh Amendment); Zimmeck v. Marshall Univ. Bd. of Governors, No. CIV.A. 3:13-14743, 2013 WL 5700591, at *6 (S.D.W. Va. Oct. 18, 2013)("As an 'arm of the state,' the Marshall University Board of Governors has Eleventh Amendment immunity from Plaintiff's § 1983 claims.").

Further, "[j]ust as the State is immune from suits brought under § 1983, likewise are state officials acting in their official capacities immune." Zimmeck v. Marshall Univ. Bd. of Governors, No. CIV.A. 3:13-14743, 2013 WL 5700591, at *6 (S.D.W. Va. Oct. 18, 2013) See generally Will, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Therefore, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); Jemsek v. Rhyne, 2016 WL 5940315, at *3 (4th Cir. 2016)(quoting Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100)).

Here, clear precedent dictates that WVU and the WVU BOG, as arms of the state, are immune under the Eleventh Amendment from § 1983 claims. Such immunity also extends to Defendant Ryan as a state official. None of the Defendants, WVU, WVU BOG, nor Defendant Ryan, are persons within the meaning of §1983. Accordingly, the undersigned recommends that Defendants' Motion to Dismiss [ECF No. 9 and 11] be **GRANTED** and Plaintiff's § 1983 claims be **DISMISSED**.

*2. Fourteenth Amendment Due Process Claim*

Reading the *pro se* Complaint liberally, Plaintiff asserts that, as a result of the Defendants'

actions, he was deprived of a constitutionally protected liberty interest in his reputation and

suffered an interference with a property interest in his education. [See e.g. ECF No. 1 at 6

("Plaintiff was not given a chance to defend himself against these false accusations and to clear

his name")]; [ECF No. 1 at 5 ("Plaintiff ultimately had to rewrite his poem [assignment] as a

result.")].

The Fourteenth Amendment to the United State Constitution provides that a State may not

"deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend.

XIV, § 1. In order to prevail on a procedural due process claim, a plaintiff must show "(1) a

cognizable liberty or property interest; (2) the deprivation of that interest by some form of state

action; and (3) that the procedures employed were constitutionally inadequate." Shirvinski v. U.S.

Coast Guard, 673 F.3d 308, 314 (4th Cir. 2012)(citing Kendall v. Balcerzak, 650 F.3d 515, 528

(4th Cir.2011)).

"To have a property interest subject to procedural due process protection, an individual

must be entitled to a benefit created and defined by a source independent of the Constitution, such

as state law." Huang v. Bd. of Governors of Univ. of N. Carolina, 902 F.2d 1134, 1141 (4th Cir.

1990)(citing Board of Regents v. Roth, 408 U.S. 564, 577 (1972); Bradley v. Colonial Mental

Health & Retardation Servs. Bd., 856 F.2d 703, 707 (4th Cir.1988)); see also Board of Curators of

Univ. of Missouri v. Horowitz, 435 U.S. 78 82 (1978) (noting that "property interests are creatures

of state law" which must be recognized by the relevant state); Trotter v. Regents of Univ. of New

Mexico, 219 F.3d 1179, 1184 (10th Cir. 2000) (same).

The Supreme Court of Appeals of West Virginia has long recognized that a student has "a sufficient property interest in the continuation and completion of his medical education to warrant the imposition of minimal procedural due process protections." Evans v. West Virginia Bd. Of Regents, 271 S.E.2d 778, 780 (W.Va. 1980) (citing State ex. rel. McLendon v. Morton, W. Va., 249 S.E.2d 919 (W. Va. 1978); North v. West Virginia Board of Regents, 233 S.E.2d 411 (W. Va. 1977)). In North, the court reasoned that the plaintiff's "interest in obtaining a higher education with its concomitant economic opportunities, coupled with the obvious monetary expenditure in attaining such education, gives rise to a sufficient property interest to require procedural due process on a removal." 233 S.E.2d at 415. This Court has interpreted that "the same reasoning applies across any discipline," regardless of what Plaintiff may be studying. Al-Asbahi, No. 1:15CV144, 2017 WL 402983, at *11 (Plaintiff possessed a property interest in the continuation and completion of his pharmacy sufficient to trigger procedural and substantive due process protections.). To summarize, there is a sufficient well-established property interest in obtaining a higher education which triggers minimal procedural due process protections."

In contrast, precedent counsels against recognizing reputation *by itself* as a liberty interest protected under the Due Process Clause. Siegert v. Gilley, 500 U.S. 226, 233 (1991). ("[I]njury to reputation by itself [is] not a 'liberty' interest protected under the [Due Process Clause].") Shirvinski v. U.S. Coast Guard, 673 F.3d 308, 314 (4th Cir. 2012)(citing Paul v. Davis, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); Daniels v. Williams, 474 U.S. 327, 332 (1986)) (The Supreme Court "has repeatedly admonished judges to be wary of turning the Due Process Clause into 'a font of tort law' by permitting plaintiffs to constitutionalize state tort claims through artful pleading.")

Accordingly, "a plaintiff must demonstrate that his reputational injury was accompanied by a state action that 'distinctly altered or extinguished' his legal status if he wants to succeed." Shirvinski v. U.S. Coast Guard, 673 F.3d 308, 315 (4th Cir. 2012)(citing Paul, 424 U.S. at 711). This is known as the "stigma plus" standard because it requires a reputation injury (the stigma), accompanied by a state action that distinctly altered or extinguished a legal status or right (the plus). See Doe v. Alger, 175 F. Supp. 3d 646, 660 (W.D. Va. 2016)(citing Shirvinski, 673 F.3d at 315.). See also Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 309 (4th Cir.2006) (citing Sadallah v. City of Utica, 383 F.3d 34, 38 (2d Cir.2004))("A 'stigma-plus' claim requires [the plaintiff] to show: '(1) the utterance of a statement 'sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false,' and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights.'").

When applying these standards in the case of Logar v. W. Virginia Univ. Bd. of Governors, No. 1:13-CV-145, 2013 WL 4501052, at *12 (N.D.W. Va. Aug. 21, 2013), this Court held that a stigma-plus claim was unavailable to a plaintiff where the plaintiff failed to identify any specific defamatory statements. The Court further held that a university's failure to abide by its own guidelines and regulations does not, in itself, constitute a due process violation. Id. (citing Goodrich v. Newport News School Bd., 743 F.2d 225, 227 (4th Cir.1984)).

Here, like Logar, Plaintiff fails to specify any defamatory statements that were published. Plaintiff asserts that Defendant Ryan had internally determined Plaintiff was a "sexual deviant" and began her "investigation" accordingly, but there are no factual allegations that any of the Defendants uttered or published any false statements that are derogatory as to cause a reputation harm. At most, taking the facts of the Complaint as true, Defendant Ryan asked female students their impression of Plaintiff Young and Defendant Ryan inquired internally into suspected sexual

misconduct. Further, Plaintiff fails to show any injury that resulted because of the state action. Plaintiff asserts an ambiguous possibility of a harm rather than an injury that has occurred. [See e.g. ECF No. 1 at 7 (This "situation could have been really detrimental to the Plaintiff's reputation, as well as his person.")]. Even if Defendant WVU BOG was inconsistent or deviated from its own procedures in terms of the investigation into this matter, the Defendants' conduct as alleged in Complaint does not rise to the level of a due process violation where the Office of Student Conduct stated there was no complaints made against Plaintiff, the Director of Equity Assurance/Title IX Coordinator told the Plaintiff his actions did not constitute sexual misconduct, and there are no factual allegations of defamatory statements made.

Next, Plaintiff does not allege an interference with his property interest in education sufficient to state a due process claim. Generally, an action causing interference with one's educational property interest triggering a due process claim would be an action interfering with the continuation or completion of one's education, such as the suspension or expulsion of a student without proper procedure. Here, Plaintiff alleges he was required to rewrite a poetry assignment at the direction of Defendant Ryan. However, despite this, Plaintiff was able to complete his English course, graduate in Fall 2020, and will be entering into a graduate program at the same institution soon. Plaintiff alleged no interference with the continuation or completion of his education. Plaintiff puts forth no factual allegations in his Complaint that his educational property interest was harmed or disadvantaged by state actions.

Thus, the undersigned further finds that no recognizable Fourteenth Amendment injury has been articulated and recommends that Defendants' Motion to Dismiss [ECF No. 9 and 11] be **GRANTED** and Plaintiff's § 1983 claims be **DISMISSED**.

*3. First Amendment Claims*

16

Plaintiff also alleges that Defendant Ryan violated his freedom of speech rights, as protected by the First Amendment of the U.S. Constitution and Article III, Section 7 of the West Virginia Constitution, by requiring Plaintiff to rewrite a poetry assignment.

It is well established that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." Tinker v. Des Moines Indep. Cmty. Sch. Dist., 393 U.S. 503, 506 (1969). However, "educators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns." Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260, 273 (1988). Federal courts 'do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values.'" Epperson v. Arkansas, 393 U.S. 97, 104 (1968).

In the comparable case of Pompeo v. Bd. of Regents of the Univ. of New Mexico, 852 F.3d 973, 985 (10th Cir. 2017), the U.S. Court of Appeals for the Tenth Circuit held that a college instructor was able to restrict a student's speech based on viewpoint by asking the student to rewrite an assignment where the instructor believed the student's speech was offensive or inflammatory and where the instructor's actions were objectively related to a legitimate pedagogical goal. Specifically, in Pompeo, the college instructor found the sexual language used by the student in the assignment to be inappropriate, possibly disruptive and inflammatory, and told the student that strong statements critiquing lesbianism must be supported by critical analysis. Pompeo, 852 F.3d at 979-980. The Tenth Circuit, in affirming the district court's grant of summary judgment in favor of the defendants, wrote that "[s]hort of turning every classroom into a courtroom, we must 'entrust[ ] to educators these decisions that require judgments based on viewpoint.'" Pompeo, 852

F.3d at 989–90 (quoting <u>Fleming v. Jefferson Cty. Sch. Dist. R-1</u>, 298 F.3d 918, 926, 934 (10th Cir. 2002)).

Here, based on the facts put forth in the Complaint, Defendant Ryan reviewed Plaintiff's poem and concluded "due to the climate, you should not read a poem with sexual innuendos[,]" [ECF No. 1 at 5]; Plaintiff needed to rewrite his poem as a result. The undersigned agrees with the precedent set by the Supreme Court and the persuasive analysis put forth by the Tenth Circuit. This Court must not intervene in the daily operations of college courses, especially where the actions complained of do not directly and sharply implicate basic constitutional values. While Plaintiff was required to write his classroom assignment, which may feel unfair or censorial, Defendant Ryan admittedly had an objective legitimate pedagogical concern regarding the modern climate and introducing Plaintiff's sexual innuendos into the classroom by way of the assignment. The Complaint does not provide sufficient facts for this Court to draw the reasonable inference that the Defendant is liable for a First Amendment violation. Consequently, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss [ECF No. 9 and 11] be **GRANTED** to the extent that Plaintiff fails to state a First Amendment claim upon which relief may be granted.

**B.     The undersigned recommends Plaintiff's Age Discrimination Act ("ADA") claims be dismissed because of a failure to exhaust administrative remedies and a failure to allege enough facts to state a claim to relief that is plausible on its face.**

In Count II of the Complaint, Plaintiff asserts a claim of age discrimination in violation of 34 C.F.R. 110. Defendants argue that Plaintiff's age discrimination claim should be dismissed because Plaintiff is seeking compensatory rather than injunctive relief, Plaintiff has not exhausted his administrative remedies as required, and Plaintiff has not alleged facts sufficient to support a plausible claim of age discrimination.

*1. Relief Sought*

34 C.F.R. § 110 was promulgated in order to outline the United States Department of Education's "rules for implementing the Age Discrimination Act of 1975." 34 C.F.R. § 110.1. The Age Discrimination Act of 1975 ("ADA") provides "[n]o person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance." 42 U.S.C. § 6102, *et seq*. Alternatively put, a recipient of federal financial assistance may not "use age distinctions or take any other actions which have the effect, on the basis of age, of . . . [d]enying or limiting individuals in their opportunity to participate in any program or activity receiving Federal financial assistance." 45 C.F.R. § 90.12(b)(2).

The ADA provides a limited private right of enforcement that is confined to injunctive relief against the entity that receives federal funds. See Tyrrell v. City of Scranton, 134 F. Supp. 2d 373, 381–84 (M.D. Pa. 2001). Specifically, § 6104(e)(1) provides individuals may bring suit "to enjoin a violation of this Act by any program or activity receiving Federal financial assistance" and further provides that plaintiffs who prevail may receive "the costs of suit, including a reasonable attorney's fee[.]" 42 U.S.C. § 6104(e)(1). Other district courts have reasoned that Congress purposely excluded a private right of action to seek monetary damages under the ADA. See e.g. Tyrrell v. City of Scranton, 134 F. Supp. 2d 373, 383 (M.D. Pa. 2001)("In the context of this detailed remedial scheme, in which Congress has expressly provided for administrative remedies as well as a private right to seek injunctive relief, Congress' failure to mention a private right to seek damages weighs heavily against the judicial implication of such a remedy.").

In the instant case, Plaintiff is seeking "any appropriate declaratory or equitable relief required to prevent the continued violation of Plaintiff's constitutional rights[,]" "general damages for past, present, and future pain and suffering, and other damages in excess of $1,000,000[,]" and

"the reasonable costs and fees associated with bringing this action to enforce their federal protected rights to due process[,]" and "any other award that the Court deems just and proper." [ECF No. 1 at 7]. The ADA does not support an action for damages. The undersigned must **RECOMMEND** that Plaintiff's claims for damages under the ADA be **DISMISSED**. Even reading the *pro se* Complaint most liberally, with regard to any remaining claims under the ADA for equitable or injunctive relief, the undersigned finds they too must be dismissed for failure to exhaust and failure to state a claim as articulated below.

   *2. Failure to Exhaust*

   Under the ADA "[n]o action ... shall be brought ... if administrative remedies have not been exhausted." 42 U.S.C. § 6104(e)(2). The Department of Education requires all complaints to be filed "within 180 days from the date the complainant first had knowledge of the alleged discrimination." 34 C.F.R. § 110.31(a). See Kamps v. Baylor Univ., 592 F. App'x 282, 285 (5th Cir. 2014)(dismissing ADA claim where plaintiff had not filed a complaint with the Department of Education in compliance with their requirements prior to filing suit).

   In this instance, Plaintiff Young alleges that the first instances of age discrimination occurred in March 2020 when Defendant Ryan began "performing her own investigations and accusing him of doing something wrong by asking female students to be part of film project[.]" [ECF No. 1 at 5]. Defendants argue that Plaintiff Young failed to exhaust administrative remedies as required, by filing a complaint with the Department of Education prior to filing suit in this Court, and thus, the ADA claims must be dismissed. The undersigned agrees. There is no evidence Plaintiff Young has filed a timely complaint through the Department of Education or exhausted as required before bringing this action. The undersigned **RECOMMENDS**, in accordance with the ADA and its regulations, that the Defendant's Motion to Dismiss [ECF No. 9 and 11] be

**GRANTED** due to Plaintiff's failure to first exhaust administrative remedies related to the age discrimination claims.

### 3. Failure to State a Claim

Furthermore, in support of his claim for age discrimination, Plaintiff states "It is Plaintiff's *opinion* that Dr. Ryan implemented these actions due to him being a much older student, which constitutes age discrimination . . . Plaintiff *feels* that his age is a direct cause of Dr. Ryan's actions, performing her own investigations and accusing him of doing something wrong by asking female students to be part of his film project." [ECF No. 1 at 5 (emphasis added)]. A complaint must include factual content that allows this Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Conclusory statements are not sufficient. There are no factual allegations in the Complaint that support a reasonable inference of discrimination by Defendants Ryan or WVU BOG. Plaintiff's feelings and opinions, no matter how sincere, are insufficient for the purposes of Rule 12(b)(6). Therefore, in addition to Plaintiff's failure to first exhaust administrative remedies, the undersigned **RECOMMENDS** Defendant's Motion to Dismiss [ECF No. 9 and 11] be **GRANTED** to the extent that Plaintiff's allegations of age discrimination fail to state a claim upon which relief may be granted.

**C.    The undersigned recommends Plaintiff's Title VI racial discrimination claims be dismissed because of his failure to allege enough facts to state a claim to relief that is plausible on its face, and further, Defendant Ryan is not the proper Defendant under the Act.**

In Count III of the Complaint, Plaintiff asserts a claim of racial discrimination in violation of 34 C.F.R. 100.

Title VI of the Civil Rights Act of 1964 ("Title VI") provides "No person in the United States shall, on the grounds of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving

Federal financial assistance." 42 § U.S.C. 2000d, *et seq*. 34 C.F.R. 100 was promulgated in order to effectuate the provisions of Title VI, "to the end that no person in the United States shall; on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any program or activity receiving Federal financial assistance from the Department of Education." 34 C.F.R. 100.1. The immunity conferred upon the states by the Eleventh Amendment does not apply to violations of Title VI. 42 U.S.C § 2000d–7(1); Franks v. Kentucky School for the Deaf, 142 F.3d 360, 362–63 (6th Cir.1998).

The purpose of Title VI is two-fold: "[f]irst, Congress wanted to avoid the use of federal resources to support discriminatory practices; second, it wanted to provide individual citizens effective protection against those practices." Cannon v. Univ. of Chicago, 441 U.S. 677, 704 (1979). "To prevail on a claim under Title VI, a plaintiff must prove that the defendant received federal financial assistance and that the defendant engaged in intentional discrimination based on race, color, or national origin." Callum v. CVS Health Corp., 137 F. Supp. 3d 817, 844 (D.S.C. 2015)(citing Alexander v. Sandoval, 532 U.S. 275, 280 (2001)). See also Bowman v. Baltimore City Bd. of Sch. Commissioners, 173 F. Supp. 3d 242, 247 (D. Md. 2016)("Under Title VI, a plaintiff must show that 'the program or activity under which a plaintiff was allegedly subjected to discrimination received federal financial assistance. Federal funding is deemed an element of the cause of action.'").

*1. Failure to State a Claim*

In support of his claim for racial discrimination, Plaintiff states "Plaintiff *feels* that if he were not African America, Dr. Ryan's actions would have been different, and she would not have taken any actions at all." [ECF No. 1 at 6 (emphasis added)]. Plaintiff then immediately concludes

"This constitutes racial discrimination." Id. A complaint must include factual content that allows this Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. As with Count II, there are no factual allegations in the Complaint that support a reasonable inference of discrimination by the Defendants. As stated above, Plaintiff's feelings and opinions, no matter how sincere, are insufficient for the purposes of Rule 12(b)(6). Therefore, the undersigned **RECOMMENDS** Defendant's Motion to Dismiss [ECF No. 9 and 11] be **GRANTED** to the extent that Plaintiff's Title VI Claim fails to state a claim upon which relief may be granted.

### 2. Proper Defendant – Title VI

Generally, "the proper defendant in a Title VI case is an entity rather than an individual." Farmer v. Ramsay, 41 F. Supp. 2d 587, 592 (D. Md. 1999)(citing Jackson v. Katy Independent School District, 951 F.Supp. 1293 (S.D.Tex.1996)). See also Buchanan v. City of Bolivar, Tennessee, 99 F.3d 1352, 1356 (6th Cir.1996) ("Plaintiff's claim ... fails because she asserts her claim against Lawson and Weaver and not against the school, the entity allegedly receiving financial assistance."). A "program or activity" for the purposes of Title VI is defined as "all the operations of" a "department, agency, ... or other instrumentality of a State or of a local government." 42 U.S.C. § 2000d–4a(1)(A).

Defendant Ryan is an individual rather than an entity, a "program or activity . . . receiving federal financial assistance." Even in her official capacity as a public university professor, she is not the proper defendant for a Title VI claim. Even though Plaintiff did not put forth facts or events in his Complaint sufficient for a plausible claim of intentional racial discrimination, the undersigned would also note that a claim against Defendant Ryan is not provided for by language of Title VI.

**D.    The undersigned recommends Plaintiff's False Claims Act claims be dismissed because of there is no private right of action under the Act, and further, Defendants are not federal officials.**

The Supreme Court has made it clear that "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." Cannon v. Univ. of Chi., 441 U.S. 677, 688 (1979). See also Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 817 (1986)("[A] complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treaties of the United States.").

The U.S. Court of Appeals for the Fourth Circuit has explained that to create a private civil action, Congress must "'speak[ ] with a clear voice' and the statute must 'unambiguously' express the intent 'to create not just a private right but also a private remedy.'" Clear Sky Car Wash LLC v. City of Chesapeake, 743 F.3d 438, 444 (4th Cir. 2014) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284 (2002)).

This holds true for criminal statutes. It is well-established that a private individual has no constitutional right and standing to bring a criminal complaint against another individual. See Linda R.S. v. Richard D., 410 U.S. 614 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); Leeke v. Timmerman, 454 U.S. 83 (1981); Sattler v. Johnson, 857 F.2d 224, 226–27 (4th Cir.1988) (private citizen has no constitutional right to have other citizens, including state actors, criminally prosecuted); Kindley v. Ranson, 31 F. App'x 268 (4th Cir. 2002); White v. Francis, 2009 WL 1393383, at *2 (N.D.W.Va. May 15, 2009).

In a comparable case of, <u>Fed. Sav. & Loan Ins. Corp. v. Reeves</u>, the Fourth Circuit found that the federal criminal code provisions dealing with embezzlement, fraud, and misrepresentation provide no basis for a civil cause of action where it was "clear that Congress envisioned the statute solely in criminal terms." <u>Fed. Sav. & Loan Ins. Corp. v. Reeves</u>, 816 F.2d 130, 138 (4th Cir. 1987). <u>See also, e.g.</u>, <u>Rouhi v. Kettler</u>, No. 19-3052-SAG, 2020 WL 3451871, at *3 (D. Md. June 24, 2020), <u>aff'd</u>, 831 F. App'x 636 (4th Cir. 2020)(no subject matter jurisdiction because Plaintiff's "citation to various criminal statutes, which do not include private rights of action, does not permit this Court's exercise of federal question jurisdiction."); <u>Tam Anh Pham v. Deutsche Bank Nat. Tr. Co.</u>, 583 F. App'x 216, 217 (4th Cir. 2014); <u>Phillips v. North Carolina</u>, Civil No. 5:19-CV-111-D, 2020 WL 2150526 (E.D.N.C. Mar. 24, 2020) (dismissing case for lack of subject matter jurisdiction despite pro se plaintiff's citation to federal criminal statutes as basis for civil claim); and <u>Ali v. Timmons</u>, Civil No. 04-CV-0164E, 2004 WL 1698445, at *2 (W.D.N.Y. July 26, 2004) ("Initially, plaintiff's claims for criminal theft and embezzlement must be dismissed because there is no private right of action, either express or implied, under the criminal statute raised by plaintiff, 18 U.S.C. § 641.").

Here, Plaintiff asserts that Defendant Ryan "chose to defend false accusation against Plaintiff by calling Plaintiff into her office to conduct her own investigation. Plaintiff was not given a chance to defend himself against these false accusations and to clear his name. These accusations were not true and as a result, Dr. Ryan is in violation of 18 U.S. Code § 287[.]" [ECF No. 1 at 6].

Title 18, United States Code, Section 287 provides:

Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such

25

claim to be false, fictitious, or fraudulent, shall be imprisoned not more than five years and shall be subject to a fine in the amount provided in this title.

18 U.S.C. § 287.

This Court surely has original jurisdiction under 18 U.S. Code § 3231 to hear all criminal cases involving offenses against the laws of the United States. However, the Government, not private citizens, is empowered prosecute criminal offenses before the Court. Nyguyen v. Green, 986 F.2d 1414 (4th Cir. 1993)("Only the sovereign may bring criminal charges; a private citizen may not use the courts as a means of forcing a criminal prosecution.").

A private citizen lacks the right to prosecute another, and Congress has not provided a private right for the Plaintiff to bring a private action for false allegations against Defendant Ryan or any others in this federal district court. Like Reeves, there is no basis under the criminal statute for the cause of action asserted by Plaintiff. Furthermore, the undersigned agrees with the Defendants – even if there were a private cause of action under § 287, which there is not, Plaintiff's cause of action would fail because neither WVU BOG nor Dr. Ryan are departments, agencies, or officials of the federal government.

Accordingly, the undersigned **RECOMMENDS** that the Defendants' Motion to Dismiss, [ECF No. 9 and 11], be **GRANTED** and Plaintiff's claim under the False Claims Act be dismissed for failure to state a claim upon which relief may be granted.

## V.    RECOMMENDATION

For the reasons stated herein, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss, [ECF No. 9 and 11], be **GRANTED** and Plaintiff's Complaint be **DISMISSED**.

Any party shall have fourteen days from the date of filing this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections,**

**identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.**   A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk of the Court is directed to send a copy of this Report and Recommendation to all counsel of record and to the *pro se* Plaintiffs by certified mail, return receipt requested.

Respectfully submitted on June 25, 2021.

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE